**TEMPMASTER CORPORATION, Appellant,**

v.

**ELMSFORD SHEET METAL WORKS, INC., Respondent.**

**No. WD 42958.**

Missouri Court of Appeals, Western District.

Oct. 23, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Guy A. Magruder, Jr. and David M. Harding, Kansas City, for appellant.

Myron S. Silverman and Dennis J. Stanchik, Kansas City, for respondent.

Before TURNAGE, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Tempmaster Corporation (Tempmaster) appeals from the trial court's grant of summary judgment to respondent Elmsford Sheet Metal Works, Inc. (Elmsford) in an

action concerning $50,000 due to Tempmaster under a contract between the parties in which Elmsford agreed to purchase equipment to be manufactured and delivered by Tempmaster. On appeal Tempmaster presents four points: (1) trial court error in concluding that no genuine issue of material fact existed over the issue of personal jurisdiction; (2) trial court error in concluding as a matter of law that the contract was entered into in New York; (3) trial court error in concluding that personal jurisdiction over the person of respondent would be a denial of due process; and (4) trial court error in granting summary judgment to respondent on the grounds of *forum non conveniens*. Reversed and Remanded.

Tempmaster is a Missouri corporation which brought suit against Elmsford alleging that Elmsford still owed it $50,000 on a contract involving the manufacturing and production of air handling equipment. Elmsford filed a motion to dismiss and both sides submitted affidavits to the trial court.

Elmsford's general manager, Don Trier, in his affidavit stated that he negotiated a purchase order with Air Pak Products for the purchase of heating, ventilating and air conditioning equipment manufactured by Tempmaster. All of the precontractual negotiations took place in New York. He also participated in meetings with personnel from Elmsford, Air Pack Products and Tempmaster to develop specifications for the equipment. Again, all of the meetings took place in New York. Trier executed the purchase order in New York and delivered it to Air Pack Products in New York. Tempmaster delivered the materials it had manufactured for Elmsford directly to the New York job site. Joseph Massaro, president of Elmsford, recalled a luncheon meeting he attended in New York in August, 1985, with a representative of Air Pack Products and Michael Roberts, a vice president of Tempmaster. At that meeting they discussed in detail Tempmaster's involvement in the project. On July 9, 1986, Walter Kain, the Air Pack representative went to Elmsford's place of business and received a copy of the purchase order. Neither Air Pack nor Tempmaster ever informed Massaro that the contract would not be final until accepted by Tempmaster in Missouri.

The affidavit submitted by Tempmaster came from Michael Roberts, its vice-president in charge of sales and marketing. In his affidavit Roberts admits that Air Pak Products was its manufacturer's representative but that Air Pak was not an agent of Tempmaster. Therefore, Air Pak was not authorized to accept purchase orders for the manufacture of goods on behalf of Tempmaster. Roberts states, "That the Purchase Order ... was accepted only when received at Tempmaster's home office in the state of Missouri...."

The trial court, treating the motion to dismiss as one for summary judgment, ruled in favor of Elmsford. The trial court concluded: (1) that no genuine issue of material fact was in dispute relating to the issue of personal jurisdiction; (2) that the contract was entered into in New York so the court does not have jurisdiction over the person of respondent; and (3) that subjecting respondent to the jurisdiction of the Missouri courts would violate due process. The court also sustained Elmsford's alternate motion to dismiss on the grounds of *forum non conveniens*.

Review of a summary judgment mirrors that of a court-tried or equity proceeding. *Maxi–Lift, Inc. v. Corbett*, 780 S.W.2d 148, 149 (Mo.App.1989). The reviewing court is charged with the responsibility of determining whether any genuine issue of material fact requiring a trial exists and if as a matter of law the party is entitled to judgment. *Consumers Oil Co. v. American Nat'l Bank*, 713 S.W.2d 598, 599 (Mo.App. 1986). Review is done in the light most favorable to the party against whom summary judgment has been given. *Fisher v. Scott & Fetzer Co.*, 664 S.W.2d 662, 663 (Mo.App.1984). If the grant of summary judgment is sustainable on any theory then the judgment of the trial court must be sustained. *Missouri Highway & Transp. Com'n v. Commerce Bank*, 763 S.W.2d 172, 176 (Mo.App.1988).

Summary judgments are governed by Rule 74.04. In pertinent part, it reads:

The judgment sought shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law.

■ Applying the rules on summary judgment to the facts of the instant case leads to a determination of trial court error; that a genuine issue of material fact did, in reality, exist. The question of where the contract was actually made, New York or Missouri, was critical as to the jurisdictional issues decided by the court. It cannot be said as a matter of law that such contract was entered into in New York.

Although inartfully drafted, the affidavit of Michael Roberts, raises the issue where he states that, "no agreement was consummated between Elmsford Sheet Metal Works, Inc. and Tempmaster until such Purchase Order was received and the acceptance acknowledged by Tempmaster in the state of Missouri." While somewhat conclusory as suggested by respondent, this statement nonetheless is a sufficient basis for denying respondent summary judgment. Respondents own affidavits are likewise conclusory, labeling the purchase order "an administrative matter" and speaking of the "precontractual negotiations" which took place in New York. None of these statements give a clue as to just where the contract was entered into.

That doubt exists over the place of the contract it thus cannot be said that personal jurisdiction is lacking over Elmsford. Missouri's long-arm statute, § 506.500.1(2), RSMo 1986 allows the "making of any contract within this state" a basis for personal jurisdiction. This is one element of the two elements necessary for long-arm jurisdiction to obtain over a non-resident. A defendant must also "have sufficient minimum contacts with Missouri to satisfy due process requirements." *Dillaplain v. Lite Indus., Inc.*, 788 S.W.2d 530, 533 (Mo.App. W.D.1990). Five factors are considered by the Missouri Courts: (1) the nature and quality of the contact; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for her residents and (5) the convenience or inconvenience to the parties. *Dillaplain v. Lite Indus., Inc., supra*, at 534. The first three of these factors are considered to be of primary importance; the last two of secondary importance. *Watlow Elec. Mfg. Co. v. Sam Dick Indus., Inc.*, 734 S.W.2d 295 (Mo.App.1987).

Once these factors are examined then other considerations must be taken into account in order to comport with due process standards so that "traditional notions of fair play and substantial justice" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

A court must consider the burden of the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987), quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ In the instant case respondent entered into a contract with appellant which called for the manufacture of over one million dollars worth of equipment in the state of Missouri to be used in New York. The contract was purportedly made in Missouri and respondent has indicated that counterclaims will be made in the action. Admittedly the quantity of contacts here is slight. However, the nature of these contacts and their relationship to the cause of action are such that it does not seem unfair for respondent to be subject to the Missouri court's jurisdiction. Missouri certain-

ly has a strong interest in providing a forum for a resident to litigate a dispute involving a Missouri contract performed in Missouri. This court in *Dillaplain* explains that "[t]he cornerstone of *in personam* jurisdiction is whether a defendant 'should reasonably anticipate being haled into court' in that forum." *Dillaplain v. Lite Indus. Inc., supra,* at 535, quoting *World–Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 297, 100 S.Ct. at 567. The respondent's contacts with appellant were such that it is not at all unreasonable for respondent to anticipate being haled into court in Missouri.

In *Commercial Design Inc. v. Dean/Dale & Dean Architects,* 584 F.Supp. 890 (E.D.Mo.1984), the District Court considered a case where the plaintiff was to perform certain design services for a bank being built by defendant in Mississippi. Acceptance of the contract took place in Missouri and by the terms of the parties agreement this caused the contract to be made in Missouri. The court stated, "Defendant made a contract in Missouri and caused that contract to be performed in Missouri. Under these circumstances it is entirely fair to require defendant to defend a lawsuit in Missouri arising out of the alleged breach of said contract." *Id.* at 893. The trial court erred in its finding as a matter of law that *in personam* jurisdiction could not be exercised over Elmsford without violating due process.

The trial court also erred in granting summary judgment to Elmsford on the grounds of *forum non conveniens.* The Supreme Court of Missouri discussed the doctrine of *forum non conveniens* in *Willman v. McMillen,* 779 S.W.2d 583, 585 (Mo. banc 1989), by stating:

> In Missouri, the doctrine has been recognized in actions that accrue outside Missouri between parties who are not Missouri residents. See discussion, *Besse v. Missouri–Pacific Railroad Co.,* 721 S.W.2d 740 (Mo. banc 1986). In those situations this Court has held that a court may, in its discretion, refuse to adjudicate a nonresident's claim although it has jurisdiction and venue is proper.

The rationale purports avoidance of an unfair burden on a community of holding a trial for strangers and the duty of courts to prevent the abuse of their process. *Loftus v. Lee,* 308 S.W.2d 654 (Mo. 1958).

The appellant is a Missouri resident given a statutory right to sue respondent if the contract was indeed made in Missouri under § 506.500.1(2), RSMo 1986. To deny appellant a Missouri forum where *in personam* jurisdiction can be established over respondent borders on the ridiculous. Furthermore, respondent's affidavits do not support the trial court's conclusion.

The trial court's grant of summary judgment is reversed and the cause remanded for further proceedings.

All concur.