■ CATHERINE HASER, Respondent-Appellant, v PAUL D. HASER, Defendant. TONI ROBINSON, Nonparty Appellant-Respondent. [707 NYS2d 47] —Order, Supreme Court, New York County (Walter Tolub, J.), entered on or about May 10, 1999, which, *inter alia,* awarded a $35,000 charging lien to nonparty appellant Toni Robinson (plaintiff's former counsel) and relegated her to commence a plenary action against defendant to recover this amount, unanimously modified, on the law and the facts, to direct the enforcement of the charging lien against those payments from defendant to plaintiff which the parties' settlement characterized as "additional child support," deemed to be plaintiff's distributive share, and otherwise affirmed, with costs.

This case raises the issue of the appropriate means to enforce an attorney's charging lien pursuant to Judiciary Law § 475, where the parties have structured their settlement in a way that frustrates the attorney's claim for fees. In November 1995, plaintiff Catherine Haser hired nonparty appellant Toni Robinson, an attorney, to represent her in her divorce action against defendant Paul D. Haser. After significant work by Robinson, by February 1997, the divorcing spouses had orally agreed on everything but the value of defendant's medical license. Meanwhile, the relationship between Robinson and plaintiff had deteriorated. Plaintiff owed over $40,000 in legal fees. Robinson announced her intent to withdraw as counsel, but continued to perform various "exit" services through August while plaintiff found new counsel. At this point, Robinson was still under the impression that the matter would go to trial because the parties could not agree on selection of an expert to value the defendant's license.

Robinson then filed a motion to fix and, if necessary, enforce her charging lien. Judiciary Law § 475 states that an attorney who appears for a party has a lien upon her client's cause of

action, which attaches to any determination in her client's favor "and the proceeds thereof in whatever hands they may come." The lien cannot be adversely affected by any settlement between the parties. Moreover, the attorney may enforce it simply by making a petition to the court in the proceeding where she appeared, rather than having to bring a separate plenary action (*Miller v Kassatly*, 216 AD2d 260).

The court referred Robinson's claim to a Special Referee to determine the amount of the lien. In July 1998, while the Referee was still considering the matter, plaintiff and defendant settled. However, neither the Referee nor Robinson was made aware of this fact before the Referee issued his recommendations.

The settlement was structured in an unusual way. In addition to the ordinary provisions for child support for the couple's two minor children, which would terminate upon emancipation, section 4 (c) of the settlement provided for a series of additional payments, designated "additional child support," which explicitly would *not* terminate upon emancipation. Under section 4 (c), defendant would pay plaintiff $18,000 per year from July 1, 2000 to July 1, 2009, and $38,000 per year from July 1, 2010 to July 1, 2018. Significantly, the paragraph headed "Equitable Distribution" provided that as full compensation for any right to a distributive share of defendant's assets, including the disputed medical license, plaintiff would receive $38,000 on July 1, 2019.

It is no coincidence that this equitable distribution payment structure neatly picks up where the so-called "additional child support" leaves off. Unlike the other child support provisions in the settlement, the payments pursuant to section 4 (c) are not dependent on emancipation, nor is there any indication what expenses they are intended to cover. It is also implausible that plaintiff would agree to wait 20 years for this relatively minor sum as her sole share of defendant's medical license, when her litigation conduct shows that she considered it a substantial asset. Indeed, she concedes that they structured the agreement this way so as to prevent defendant from evading his equitable distribution obligations when he declared bankruptcy, as such obligations are dischargeable in bankruptcy but child support is not (11 USC § 523 [a] [5]). Unfortunately for Robinson, an attorney's charging lien cannot attach to an award of child support (CPLR 5205 [d] [3]).

The IAS Court determined that Robinson was entitled to a $35,000 charging lien, but the court would not let her enforce it in the matrimonial action against general funds held by de-

fendant. The court noted its disapproval of "the parties' collusive intent to deprive counsel of her rights to enforce the charging lien," but held that "since there are no immediate proceeds with which to enforce the lien, counsel is relegated to the commencement of a plenary action to recover her fees."

Under New York law, a plaintiff's attorney may enforce her statutory charging lien against the defendant's own assets, if he still possesses the settlement proceeds or knowingly paid them to the plaintiff so as to deprive the attorney of her compensation (*Kaplan v Reuss*, 113 AD2d 184, 186-187, *affd* 68 NY2d 693; *Fischer-Hansen v Brooklyn Hgts. R. R. Co.*, 173 NY 492, 502). The lien which attaches in the attorney's favor cannot be impaired by a collusive settlement (*Matter of Epstein & Furman*, 189 AD2d 738).

The IAS Court correctly ruled that the expedited procedure of Judiciary Law § 475 is designed to attach only the specific proceeds of the judgment or settlement in the action where the attorney appeared. If the attorney wishes to enforce her lien against the defendant's other assets, she must bring a separate action against him (*see, Butler, Fitzgerald & Potter v Gelmin*, 235 AD2d 218, 219).

However, the IAS Court erred when it concluded that there were no immediate proceeds to which Robinson's lien could attach. The court should have exercised its discretion to look behind the parties' self-serving definition of "additional child support" in the settlement agreement (*see, National Exhibition Co. v Crane*, 167 NY 505, 508). There can be little doubt that the payments provided for in section 4 (c) truly represent plaintiff's distributive share of defendant's medical license. As such, they are immediately subject to Robinson's lien (*see, Daley v Daley*, 230 AD2d 182, 185, *lv denied* 93 NY2d 810).

Plaintiff's cross-appeal challenges the amount of the award as excessive. However, we decline to disturb the IAS Court's determination in this regard. The trier of fact is generally in the best position to evaluate all the relevant factors, such as the time, effort and skill that went into the attorney's work (*see, DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881). Robinson performed substantial work on plaintiff's case. For example, she prepared and served interrogatories and document requests, prepared for depositions, defeated two motions by defendant for temporary custody and injunctive relief, and obtained a sizeable pendente lite award of spousal and child support. While the Referee only recommended an award of $19,765, this was based in part on the misconception that Robinson had failed to obtain some discovery materials. In reality,

of course, no more discovery was necessary because the action had been settled. Moreover, the failure to obtain an expert valuation of defendant's medical license was partly due to the parties' uncooperative behavior. Thus, Robinson was responsible for the majority of the work on plaintiff's case, and obtained very favorable results. Given that Robinson's bills, which plaintiff had received without objection, sought a total of $52,360 (including interest and disbursements), $35,000 was not an unreasonable award. Concur—Sullivan, P. J., Rosenberger, Mazzarelli, Buckley and Friedman, JJ.