■ LUCIA A. TOPF, Respondent, v JOHN E. TOPF, Appellant.
[847 NYS2d 96]—

In a matrimonial action in which the parties were divorced by judgment dated October 17, 2000, the defendant appeals, as limited by his brief, from (1) stated portions of an order of the Supreme Court, Putnam County (O'Rourke, J.), dated October 14, 2005, which, inter alia, in effect, granted that branch of the plaintiff's cross motion which was for leave to enter judgment against the defendant for child support arrears, and denied his motion, among other things, to reduce his child support obligation during the period the children reside with him, for payment for his 25% interest in certain real property in Mahopac, and for a downward modification of his child support arrears, and (2), stated portions of a resettled order of the same court dated November 14, 2005, which, among other things, in effect, incorporated certain provisions of the order dated October 14, 2005.

Ordered that the appeal from the order is dismissed, as the order was superseded by the resettled order; and it is further,

Ordered that the resettled order is modified, on the law, by deleting the provision thereof which, in effect, incorporated so much of the order, as, in effect, granted that branch of the plaintiff's cross motion which was for leave to enter judgment against the defendant for child support arrears, and denied the defendant's motion, except those branches of the defendant's motion which were for reduction of his child support obligation during the period the children reside with him and payment for his 25% interest in the real property in Mahopac, and substituting therefor a provision vacating that portion of the order; as so modified, the resettled order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Putnam County, for a hearing in accordance herewith and new determination on the defendant's motion except those branches of the defendant's motion which were for reduction of his child support obligation during the period the children reside with him and payment for his 25% interest in the real property in Mahopac, and on the plaintiff's cross motion.

In its resettled order, the Supreme Court corrected the weekly figure for the defendant's basic child support obligation to $206.18 per week. Yet, it made no adjustment in the amount of arrears that had been calculated using a higher figure. This was error. Furthermore, it was error for the Supreme Court to have otherwise incorporated the determinations in its order dated October 14, 2005, other than the denial of those branches of the defendant's motion which were for reduction in his child sup-

port during the period the children reside with him and payment for his 25% interest in certain real property in Mahopac. Those two branches of the defendant's motion were properly denied based on explicit provisions of the parties' separation agreement. However, the Supreme Court erred in deciding the remainder of the defendant's motion and the plaintiff's cross motion in the absence of a hearing.

In deciding the remainder of the defendant's motion and the plaintiff's cross motion, the Supreme Court was required to consider the provision of the parties' separation agreement which provided the defendant with a credit to the extent he assumed the plaintiff's indebtedness to Champion Mortgage in connection with the marital residence (hereinafter the Champion loan). Among the issues for a hearing are the complex calculations involving the defendant's agreement to pay his and the plaintiff's indebtedness on the Champion loan. To the extent he made these payments on behalf of both parties, the separation agreement specified that he was to be credited with the plaintiff's share against his share of child care expenses borne by the plaintiff. The Supreme Court, in the order dated October 14, 2005, erroneously determined that the defendant has no claim for payments he made on the Champion loan. Likewise, the Supreme Court must determine whether the defendant's discharge in bankruptcy included the Champion loan. If it did, the plaintiff would then be required to make all of the payments on the Champion loan. In that event, she would be entitled to reimbursement for the defendant's share of child care expenses thereafter, undiminished by payments he would otherwise have made on the Champion loan. While the defendant may have been discharged from payments on the Champion loan by reason of his bankruptcy, child support obligations are not dischargeable in bankruptcy (*see* 11 USC § 523 [a] [5]; *Haser v Haser*, 271 AD2d 253 [2000]; *Barax v Barax*, 246 AD2d 382, 385 [1998]). Moreover, insofar as the Champion loan is concerned, the defendant alleges that he paid $931.11 of insurance premiums, that were the obligation of the plaintiff, to maintain the Champion loan. The defendant claims a credit in that amount to which he would be entitled if the plaintiff failed to pay premiums as he alleges. The plaintiff claimed she changed carriers and forwarded copies of the policies to the defendant, who should have forwarded them to Champion Mortgage. This merely raised another issue of fact for a hearing. Additionally, the defendant was supposed to pay down the Champion loan with his share of the net proceeds of the sale of the condominium to the plaintiff's brother for $80,000. The defendant failed to do so but claimed the net proceeds were improperly dimin-

ished by unpaid common charges that the plaintiff failed to pay while collecting rental income from her brother. This raised another issue for the hearing.

As the issues regarding the Champion loan are related to child care expenses each party claims to have incurred since the divorce, there must be a determination of these expenditures made by each party and a calculation of who paid the greater amount so that party will receive a credit for one half of the difference. The plaintiff's assertion that she expended the sum of $66,650 was unsupported and conclusory. A hearing will give the parties an opportunity to establish their respective child care expenses.

When the Supreme Court has taken proofs in accordance with the foregoing it will then have the capacity to fix a figure for the defendant's arrears and direct the amendment of the income execution imposed by the Support Collection Unit. The recalculation will also afford the defendant the context within which to propound his application for downward modification of his child support obligation. Crane, J.P., Goldstein, Covello and Dickerson, JJ., concur.