In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 CHARLES BABB and AUTUMN BABB, ) No. ED109479
 )
 Appellants, ) Appeal from the Circuit Court of
 ) St. Louis County
 vs. )
 ) Honorable David L. Vincent III
 TIFFANY BARTLETT, )
 )
 Respondent. ) Filed: December 14, 2021

 Autumn Babb (“Autumn”), in her individual capacity and as Plaintiff Ad Litem for her

recently deceased husband, Charles Babb (“Charles”)1 (Autumn and Charles are hereinafter

collectively “Appellants”), appeals from the judgment of the Circuit Court of St. Louis County,

which granted Tiffany Bartlett’s (“Bartlett”) motion to dismiss Appellants’ claims against her for

lack of personal jurisdiction. This lawsuit was commenced by Appellants in April of 2020, and

arises from personal injuries Charles allegedly sustained in a vehicular accident with Bartlett that

occurred in California in May of 2018. However, due to Charles’s death in August of 2021,

Autumn was substituted as Plaintiff Ad Litem for Charles in this matter in September of 2021,

shortly before oral argument and submission of this case. In her sole point on appeal, Autumn

argues that the circuit court erred in finding that Bartlett was not subject to personal jurisdiction

under Missouri’s “long-arm” statute because, even though Charles, Autumn, and Bartlett were

1
 In order to avoid confusion, we refer to Autumn and Charles by their first names, but mean no disrespect thereby.
Oklahoma residents at all relevant times and the accident occurred in California, Bartlett

purportedly engaged in certain conduct enumerated in the statute and it was foreseeable that

Bartlett could be haled into a Missouri court for the claims asserted against her in this lawsuit.

 We affirm.

 I. Factual and Procedural Background

 Viewed in the light most favorable to Autumn, and giving her the benefit of all

reasonable inferences therefrom, the record on appeal reveals the following facts:

 On April 7, 2020, Appellants filed their original three-count Petition against Bartlett and

her employer, Meier Environmental Services and Associates, Inc. d/b/a Mesa, Inc. (“Mesa”)

(Bartlett and Mesa are hereinafter collectively “Respondents”), alleging that on or about May 31,

2018, Bartlett was negligent in the operation of a commercial motor vehicle that caused serious

physical injury to Charles (the “2018 Incident”),2 and that Meier is legally responsible for

Bartlett’s alleged negligence under various legal theories (the “Original Petition”).3 The Original

Petition alleged that Charles, Autumn, and Bartlett are all “citizens of the State of Oklahoma,”

whereas Mesa is a Missouri corporation with its principal place of business in St. Louis County,

Missouri. However, the Original Petition failed to allege where the 2018 Incident occurred,

which drew a motion for more definite statement from Respondents for failure to allege

jurisdictional prerequisites for a Missouri circuit court to exercise jurisdiction over Respondents.

Before Respondents’ motion for more definite statement could be called and heard, Appellants

2
 However, in their Second Amended Petition in this matter (see supra), Appellants subsequently alleged that the
2018 Incident occurred on May 1, 2018.
3
 In Count I, Charles alleged a general negligence claim against Respondents, asserting respondeat superior and
other vicarious liability and agency theories against Mesa; in Count II, Charles alleged a claim for negligent hiring,
training, and supervision against Mesa only, which included alleged violations of numerous Federal Motor Carrier
Safety Regulations (i.e., 49 C.F.R. §§ 300-399); and in Count III, Autumn alleged a loss of consortium claim
against Respondents based on the alleged negligence in Counts I and II.

 2
filed their First Amended Petition on August 12, 2020, which was identical to the Original

Petition except that it alleged the 2018 Incident occurred in the state of California.4

 On August 14, 2020, Bartlett filed her motion to dismiss the claims against her in the

First Amended Petition for lack of personal jurisdiction (the “Motion to Dismiss”). Specifically,

Bartlett argued that the First Amended Petition alleged no basis for the circuit court to exercise

personal jurisdiction over her under Missouri’s long-arm statute, § 506.500,5 in that the 2018

Incident did not occur in Missouri and requiring her to defend this action in Missouri would

violate the due process clause of the Fourteenth Amendment to the U.S. Constitution.

 However, before the Motion to Dismiss could be called and heard, Appellants filed their

motion for leave to file their Second Amended Petition, which was identical to the First

Amended Petition in all material respects except that it added the following allegations that

purportedly supported personal jurisdiction over Bartlett in Missouri:6

 • That Bartlett contracted with Mesa in Missouri to lease her tractor to Mesa and work
 as an over-the-road truck driver carrying loads for Mesa’s customers (the
 “Agreement”);

 • That in the Agreement Bartlett agreed to venue and personal jurisdiction in the
 Circuit Court of St. Louis County for claims relating to her work for Mesa;

 • That in the Agreement Bartlett agreed to indemnify and hold Mesa harmless for
 liability arising from the claims asserted therefrom and agreed to venue and personal
 jurisdiction in the Circuit Court of St. Louis County for this purpose;

 • That in the Agreement Bartlett agreed she would fully assist in the investigation and
 documentation of any accidents or legal action involving her work for Mesa

4
 On August 20, 2020, Respondents’ Motion for More Definite Statement was called and heard; however, because
Appellants had previously filed their First Amended Petition alleging the location of the 2018 Incident, the motion
was denied as moot.
5
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2018 unless otherwise specified.
6
 The Second Amended Petition also omitted any request for attorney’s fees in the prayers for relief, which had been
requested in the Original Petition and the First Amended Petition.

 3
 (including this action), and that upon request by Mesa, she would attend hearings,
 trials, and depositions; and

 • That Bartlett worked “extensively” in Missouri picking up and delivering loads for
 Mesa customers.

In addition, in their written response in opposition to the Motion to Dismiss, Appellants argued

that Bartlett was subject to personal jurisdiction under Missouri’s long-arm statute because

Bartlett: (1) transacted business in Missouri; (2) entered into a contract in Missouri; and (3)

contracted to insure a person, property, or risk in Missouri, as set forth in sub-divisions (1), (2),

and (5) of § 506.500.1. In further opposition to the Motion to Dismiss, Appellants also

submitted copies of the following two documents received through discovery: (1) the

Independent Contractor Agreement & Equipment Lease Agreement, by and between Bartlett and

Mesa, whereby Bartlett agreed to provide certain “transportation services” to Mesa as an

independent contractor (the “IC Agreement”); and (2) the Vehicle Lease Agreement, by and

between Mesa Trucking, LLC7 and Bartlett, whereby Mesa Trucking leased to Bartlett the tractor

and trailer involved in the 2018 Incident (the “Lease Agreement”). Appellants also submitted an

affidavit whereby Charles attested, inter alia, that the tractor Bartlett was driving at the time of

the 2018 Incident was marked with the insignia “Mesa, Inc., Ballwin MO,” as well as displayed

Mesa’s identification numbers issued by the United States Department of Transportation

(“USDOT”) and the Federal Motor Carrier Safety Administration (“FMSCA”).

 On September, 24, 2020, the circuit court granted Appellants’ motion for leave to file

their Second Amended Petition. On that same date, the circuit court granted Bartlett’s Motion to

Dismiss for lack of personal jurisdiction over her, specifically stating that this motion was taken

as being filed in response to the Second Amended Petition; thus, the claims against Bartlett in the
7
 Although it is clear that Mesa Trucking, LLC is a separate entity from Meier Environmental Services and
Associates, Inc. d/b/a Mesa, Inc., there is nothing in the record indicating the relationship, if any, between these
entities.

 4
Second Amended Petition were dismissed without prejudice (the “Original Dismissal Order”).

Therefore, the Original Dismissal Order resolved all claims asserted by Appellants against

Bartlett in Counts I and III, leaving only Appellants’ claims against Mesa in Counts I, II, and III.

 On October 5, 2020, Appellants filed their motion to reconsider the dismissal of their

claims against Bartlett in the Second Amended Petition (the “Motion to Reconsider”), which also

alternatively asked the court to designate the Original Dismissal Order as final for purposes of

appeal pursuant to Rule 74.01(b).

 On November 9, 2020, Appellants were granted leave to file their Third Amended

Petition, which was substantially similar to the Second Amended Petition, but included

additional allegations purporting to support Mesa’s vicarious liability for Bartlett’s actions in

connection with the 2018 Incident.8

 On January 11, 2021, the circuit court issued an Order and Judgment addressing the

Motion to Reconsider (the “Amended Dismissal Order”), which amended the Original Dismissal

Order to include a certification, pursuant to Rule 74.01(b), that there is no just reason to delay

immediate appeal of the decision to grant Bartlett’s Motion to Dismiss. The Amended Dismissal

Order denied the Motion to Reconsider in all other respects.

 On February 16, 2021, Appellants timely filed their notice of appeal with respect to the

dismissal of their claims against Bartlett in the Second Amended Petition, and this appeal

followed.

 Following full briefing by the parties to this Court, this appeal was originally docketed

for oral argument and submission on September 8, 2021. However, on September 2, 2021,

8
 The Third Amended Petition also included all the same claims against Bartlett contained in the Second Amended
Petition, even though she had previously been dismissed from the action by the Original Dismissal Order (albeit on
an interlocutory basis at the time the Third Amended Petition was filed). However, given our disposition of the
dismissal of the Second Amended Petition, the claims against Bartlett in the Third Amended Petition are a nullity
and of no effect.

 5
pursuant to § 507.100, RSMo 2021, Autumn filed a Suggestion of Death with this Court, which

stated that Charles had died on August 29, 2021. The Suggestion of Death further stated that

Autumn had requested that the circuit court in this matter appoint her as Plaintiff Ad Litem,

pursuant to § 537.021, “for the purpose of pursuing [Charles’s] personal injury claims that

survive his death,” as well as stated that Autumn had filed a motion for leave to file a Fourth

Amended Petition to assert those surviving claims. Accordingly, by Order dated September 3,

2021, this appeal was removed from this Court’s docket of September 8, 2021, and was to be

reset if and when a proper party was substituted for Charles.9

 On September 22, 2021, Autumn filed her Motion for Substitution of Party and to Reset

Oral Argument with this Court (the “Motion for Substitution”), which represented that on

September 15, 2021, the circuit court below had granted her motion for leave to file a Fourth

Amended Petition in this matter naming her as Plaintiff Ad Litem to pursue the personal injury

claims that survive Charles’s death, and also represented that a Fourth Amended Petition had

been filed in the circuit court below on September 21, 2021, a copy of which was attached to the

Motion for Substitution.10 The Motion for Substitution further represented that on September 16,

2021, the circuit court below had ordered the appointment of Autumn as Plaintiff Ad Litem.

Finally, Autumn requested that she be substituted as the Plaintiff Ad Litem for Charles in this

appeal and requested that this appeal be reset for oral argument.

9
 As noted in our Order, Rule 52.13(a)(1) provides that “[i]f a party dies and the claim is not thereby extinguished,
the court may, upon motion, order substitution of the proper parties,” which motion must be filed within ninety (90)
days after a suggestion of death is filed or the action must be dismissed as to the deceased party without prejudice.
10
 The Fourth Amended Petition is substantially similar to the Third Amended Petition in all material respects,
except that Autumn is substituted as Plaintiff Ad Litem for Charles. In addition, the Fourth Amended Petition again
included all the same claims against Bartlett contained in the Second Amended Petition, even though she had
previously been dismissed from the action by the Amended Dismissal Order. However, given our disposition of the
dismissal of the Second Amended Petition, the claims against Bartlett in the Fourth Amended Petition are a nullity
and of no effect.

 6
 By Order dated September 28, 2021, this Court granted Autumn’s Motion for

Substitution, and thus Autumn was substituted as Plaintiff Ad Litem for Charles for purposes of

this appeal. In addition, this matter was reset for oral argument on this Court’s November 2021

docket.

 II. Standard of Review

 “When a defendant raises the issue of personal jurisdiction in a motion to dismiss, the

plaintiff has the burden to show that the trial court’s exercise of jurisdiction is proper.”

Consolidated Elec. & Mechanicals, Inc. v. Schuerman, 185 S.W.3d 773, 775 (Mo. App. E.D.

2006). Whether a plaintiff has presented sufficient evidence to establish a prima facie case of

personal jurisdiction over a defendant is a question of law that we review on appeal de novo.

Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 231 (Mo. banc 2010). In

reviewing the granting of a motion to dismiss a petition, all facts in the petition are deemed true

and the plaintiff is given the benefit of all reasonable inferences. See id. “A reviewing court

evaluates personal jurisdiction by considering the allegations contained in the pleadings to

determine whether, if taken as true, they establish facts adequate to invoke Missouri’s long-arm

statute and support a finding of minimum contacts with Missouri sufficient to satisfy due

process.” Id.

 When a motion to dismiss for lack of jurisdiction is based on facts not appearing in the

record, as in this case, “the trial court may hear it on affidavits presented by the parties, or the

court may direct that the matter be heard wholly or partly on oral testimony or deposition.”

Lindley v. Midwest Pulmonary Consultants, P.C., 55 S.W.3d 906, 909 (Mo. App. W.D. 2001)

(quoting Conway v. Royalite Plastics, Ltd., 12 S.W.3d 314, 318 (Mo. banc 2000)).

 When affidavits are presented, the trial court may believe or disbelieve any
 statements made within those affidavits. It is within the sole discretion of the trial

 7
 court to make such factual determinations. [The appellate court] must affirm the
 trial court’s ruling regarding jurisdiction if the affidavits submitted by the
 defendants in support of their motions to dismiss show they did not commit any
 act sufficient to invoke the jurisdictional provisions of the Missouri [l]ong [a]rm
 [s]tatute.

Id. (alterations in original) (quoting Chromalloy American Corp. v. Elyria Foundry Co., 955

S.W.2d 1, 4 (Mo. banc 1997)). However, “[t]his standard of review does not convert the motion

to dismiss into a motion for summary judgment as ‘the trial court’s inquiry is limited to an

examination of the petition on its face and the supporting affidavits to determine the limited

question of personal jurisdiction.’” Id. at 909-10 (quoting Capitol Indem. Corp. v. Citizens Nat’l

Bank, 8 S.W.3d 893, 898 (Mo. App. W.D. 2000)). “The merits of the underlying action are not

considered.” Id. at 810. “To demonstrate that a cause of action arose out of an activity covered

by the long[-]arm statute, however, ‘a plaintiff must make a prima facie showing of the validity

of its claim. A plaintiff need not prove all of the elements that form the basis of the defendant’s

liability, but must show that acts contemplated by the statute took place.’” Id. (quoting Conway,

12 S.W.3d at 318).

 Upon review, we must “affirm the trial court’s ruling regarding jurisdiction when the

properly filed affidavits and depositions show [defendants] did not commit any act sufficient to

invoke personal jurisdiction.” Andra v. Left Gate Property Holding, Inc., 453 S.W.3d 216,

224-25 (Mo. banc 2015) (internal quotation marks omitted) (alterations in original). However,

“the sufficiency of the evidence to make a prima facie showing that the trial court may exercise

personal jurisdiction is a question of law to be reviewed de novo on appeal.” Id. at 225 (internal

quotation marks omitted). “Review of the evidence must be on a case-by-case basis that cannot

be ‘simply mechanical or quantitative’ but instead ‘must depend rather upon the quality and

 8
nature of the activity[.]’” Id. (quoting Int’l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S. Ct.

154, 90 L. Ed. 95 (1945) (alteration in original).

 When the trial court does not state any specific grounds on which an order of dismissal is

based, as here, we must “presume dismissal was based upon one of the grounds presented, and

will affirm the dismissal if any ground can sustain the court’s action.” Lindley, 55 S.W.3d at

911.

 III. Discussion

 This case involves probing the outer limits of Missouri’s long-arm statute—specifically,

whether an Oklahoma resident who allegedly injured another Oklahoma resident in a vehicle

accident that occurred in California is subject to personal jurisdiction in Missouri for claims only

sounding in tort, where the individual defendant’s sole connection to Missouri are the contracts

she entered into with two Missouri corporations that only tangentially relate, if at all, to the

vehicle accident that occurred in California. In short, we recognize that while the reach of

Missouri’s long-arm statute is indeed long, it is not that long, and thus we hold that Bartlett is not

subject to personal jurisdiction in Missouri under the specific facts of this case.

 A. Personal jurisdiction under Missouri’s long-arm statute

 As a preliminary matter, “[w]hen personal jurisdiction is contested, it is the plaintiff who

must shoulder the burden of establishing that defendant’s contacts with the forum state were

sufficient.” Casework, Inc. v. Hardwood Assoc., Inc., 466 S.W.3d 622, 626 (Mo. App. W.D.

2015). “Missouri courts employ a two-step analysis to evaluate personal jurisdiction.” Id.

(quoting Walters Bender Strobehn & Vaughan, P.C. v. Mason, 397 S.W.3d 487, 498 (Mo. App.

W.D. 2013) [hereinafter Strobehn]). Specifically, “[t]o subject a non-resident defendant to the

long[-]arm jurisdiction of Missouri, the plaintiff must plead and prove two elements: first, that

 9
the suit arose from any of the activities enumerated in Section 506.500 RSMo…, the Missouri

long[-]arm statute; and second, that the defendant has sufficient minimum contacts with Missouri

to satisfy due process requirements.” Schuerman, 185 S.W.3d at 776 (citing Capitol Indem.

Corp., 8 S.W.3d at 899).

 Missouri’s long-arm statute provides, in pertinent part, as follows with respect to the

specific acts that may subject a defendant to personal jurisdiction in Missouri:

 Any person or firm, whether or not a citizen or resident of this state, or any
 corporation, who in person or through an agent does any of the acts enumerated in
 this section, thereby submits … to the jurisdiction of the courts of this state as to
 any cause of action arising from the doing of any of such acts:

 (1) The transaction of any business within this state;
 (2) The making of any contract within this state;
 ***
 (5) The contracting to insure any person, property or risk located within
 this state at the time of contracting….

§ 506.500.1 (emphasis added); see also Schuerman, 185 S.W.3d at 776.

 In addition to the “arising from” language contained in sub-section .1 of § 506.500, sub-

section .3 of the statute similarly provides the following limitation on causes of action that may

be asserted when personal jurisdiction is sought thereunder: “Only causes of action arising from

acts enumerated in this section may be asserted against a defendant in an action in which

jurisdiction over him is based upon this section.” § 506.500.3 (emphasis added).

 With respect to the second element for obtaining personal jurisdiction under § 506.500,

“[t]he due process clause of the Fourteenth Amendment further requires that a non-resident

defendant have sufficient minimum contacts with the forum state so that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice.” Schuerman, 185

S.W.3d at 776 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174,

2184, 85 L. Ed.2d 528 (1985)).

 10
 In conducting our analysis of whether Missouri’s long-arm statute applies in this case, we

are also guided by the following generally-applicable principle:

 The legislature, in enacting [§ 506.500], sought to extend the jurisdiction of
 Missouri courts to numerous classes of out-of-state defendants who could not
 have been sued in Missouri under the preexisting law. It also intended to provide
 for jurisdiction, within the specific categories enumerated in the statutes, to the
 full extent permitted by the due process clause of the Fourteenth Amendment.

State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc

1984) (citing State ex rel. Deere & Co. v. Pinnell, 454 S.W.2d 889 (Mo. banc 1970)). Missouri

courts also recognize that, “[a] particular purpose was to confer jurisdiction over nonresidents

who enter into various kinds of transactions with residents of Missouri.” Id.

 B. Analysis

 Our determination of whether Bartlett is subject to personal jurisdiction under Missouri’s

long-arm statute initially requires us to determine whether Autumn has met her burden of making

a prima facie showing that Bartlett engaged in any of the specific acts enumerated in § 506.500.1

and that the causes of action against Bartlett in the Second Amended Petition “arose from” those

acts. Only if we find that Autumn has met this burden must we then analyze whether Bartlett

had sufficient “minimum contacts” with Missouri to satisfy due process requirements. See

Lindley, 55 S.W.3d at 914 (declining to address whether a defendant had sufficient minimum

contacts with Missouri because the court found that the plaintiff failed to make a prima facie

showing that the defendant had transacted business in Missouri, as alleged in the plaintiffs’

response to the defendant’s motion to dismiss for lack of personal jurisdiction).

 In their opposition to the Motion to Dismiss, Appellants argued that Bartlett engaged in

the following acts enumerated in § 506.500.1: (1) transacted business in Missouri; (2) entered

into a contract in Missouri; and (3) contracted to insure Mesa in Missouri by virtue of her

 11
agreement to indemnify Mesa in the IC Agreement. However, as further explained below, we

find that either Bartlett did not engage in these acts within the meaning of § 506.500.1, or to the

extent she did, the causes of action against her in the Second Amended Petition do not “arise

from” those acts. Because the “transaction of business” argument logically follows the “making

of a contract” argument in this case, we address the “making of a contract” argument first.

 1. Making of a contract in Missouri

 With respect to Autumn’s argument that Bartlett made a contract in Missouri, we initially

recognize that, “[f]or purposes of the long-arm statute, a contract is made where acceptance

occurs.” Casework, 466 S.W.3d at 626 (quoting Strobehn, 397 S.W.3d at 498).

 In this case, Autumn relies on the existence of the IC Agreement and the Lease

Agreement in support of her “making of a contract” argument pursuant to § 506.500.1(2).

Although the Second Amended Petition itself does not specifically identify these two contracts

therein, they were subsequently submitted to the circuit court in connection with Appellants’

written briefing in opposition to Bartlett’s Motion to Dismiss, which evidence can be considered

for purposes of determining a motion to dismiss based on personal jurisdiction. Lindley, 55

S.W.3d at 909. However, even if we accept the existence of these two contracts, the Second

Amended Petition contains no factual allegations that they were actually “made” in Missouri

(i.e., that acceptance occurred in Missouri). Rather, ¶ 4 of the Second Amended Petition simply

makes the following legal conclusion: “Defendant Bartlett contracted with Defendant Mesa in

Missouri to lease her tractor to Mesa and work as an over-the-road truck driver carry [sic] loads

for Mesa customers.” That said, Appellants correctly point out that ¶ 26 of the Lease Agreement

expressly states that it was executed in Missouri by virtue of Bartlett “countersign[ing]” it in

Missouri. However, the IC Agreement contains no similar provision regarding where it was

 12
made, and Appellants’ briefing in opposition to the Motion to Dismiss likewise contained no

evidence regarding where acceptance of the IC Agreement purportedly occurred. Therefore,

Autumn has failed to meet her burden of showing that the IC Agreement was actually “made”

(i.e., accepted) in Missouri.

 However, even if, arguendo, Bartlett had accepted the IC Agreement in Missouri, it is

important to note that Appellants are not a party to it; likewise, Appellants are not a party to the

Lease Agreement. In addition, at oral argument, Autumn’s counsel conceded that she is not

claiming third-party beneficiary status for herself or Charles with respect to either contract. This

is important because Autumn references several provisions of these contracts in support of her

“making of a contract” argument, including most notably the forum selection clause in each

contract. The forum selection clause in the IC Agreement provides as follows:

 Subject to the provisions of Paragraph 9, above, any claim or cause of action
 arising or relating to this Agreement shall be brought in the Circuit Court of St.
 Louis County, Missouri, or, if appropriate, in the Federal District Court for the
 Eastern District of Missouri, Eastern Division, and the Parties hereby agree to
 submit to such jurisdiction.11

The forum selection clause of the Lease Agreement provides as follows: “The parties agree to

submit to the jurisdiction of the State and of the federal courts in the state of Missouri.” Thus,

although Autumn concedes that neither she nor Charles are third-party beneficiaries of these

contracts (and the forum selection clauses therein), she suggests that she should nonetheless

benefit from these contracts—directly or indirectly—for purposes of establishing personal

jurisdiction under § 506.500.

11
 Paragraph 9 of the IC Agreement provides that, with the exception of claims arising from vehicular accidents and
claims for cargo and/or property damage, as well as claims for which Bartlett is contractually required to indemnify
Mesa, all claims, disputes, and controversies between Mesa and Bartlett arising from or related to any matters
arising under the IC Agreement, as well as any claims for violations of state or federal statutes, shall be submitted to
binding arbitration.

 13
 We conclude that because Appellants were neither parties to nor third-party beneficiaries

of the IC Agreement and the Lease Agreement, she can neither directly invoke the forum

selection clauses and other cited provisions contained in these contracts nor indirectly benefit

from them for purposes of establishing personal jurisdiction over Bartlett pursuant to § 506.500.

 Autumn appears to suggest that because of the forum selection clause in each contract,

Bartlett should reasonably anticipate being haled into a Missouri court. However, there are two

problems with this foreseeability argument. First, the forum selection clause in each contract

only applies to claims against Bartlett brought by the other party to each agreement (i.e., Mesa

and Mesa Trucking), and thus does not apply to claims brought against Bartlett by non-parties to

those agreements, such as are pled in the Second Amended Petition by Appellants. Therefore,

although Bartlett had every reason to anticipate being haled into a Missouri court for claims

brought against her by Mesa arising from the IC Agreement or for claims brought by Mesa

Trucking arising from the Lease Agreement, she had no reason to anticipate being haled into a

Missouri court by Oklahoma residents for claims arising from a vehicle accident that occurred in

California. Second, the rule regarding whether a defendant should reasonably anticipate being

haled into a Missouri court only applies to the second prong of the long-arm analysis—whether

Bartlett had “minimum contacts” with Missouri to satisfy due process. However, the

foreseeability issue is not germane to our current determination regarding the first prong of the

long-arm analysis—whether the claims in the Second Amended Petition “arise from” Bartlett’s

purported making of the IC Agreement and the Lease Agreement in Missouri. As further

discussed below, the claims against Bartlett simply do not “arise from” these contracts.

 It defies reason that the tort claims against Bartlett (involving an ordinary vehicle

accident that occurred in California) could “arise from” these two contracts, given that the

 14
contracts themselves have absolutely nothing to do with the tort claims against Bartlett. We

recognize that Autumn has essentially argued that the 2018 Incident would not have occurred if

Bartlett had not entered into the IC Agreement because Bartlett was allegedly hauling a load for

Mesa at the time of the 2018 Incident. However, even if we accept this tenuous “but for”

causation analysis, this would not be enough to establish that Autumn’s negligence claims

against Bartlett “arose from” the IC Agreement or the Lease Agreement for purposes of

determining personal jurisdiction under § 506.500.1. In short, something more is required.

 Bartlett has directed us to Greenwood v. Sherfield, 895 S.W.2d 169, 174 (Mo. App. S.D.

1995), which generally recognized that, for purposes of determining whether a tort claim arose

from a written contract (and thus, whether the claim was subject to the arbitration provision in

the contract), “[t]he relationship between the tort claim and the contract is not satisfied simply

because the dispute would not have arisen absent the existence of the contract between the

parties.” Bartlett also directs us to Service Vending Co. v. Wal-Mart Stores, Inc., 93 S.W.3d 764,

768-69 (Mo. App. S.D. 2002), which similarly recognized that “[a] forum selection clause in a

contract does not control the site for litigation of a tort claim simply because the dispute that

produced the tort claim would not have arisen absent the existence of the contract.”

 As an initial matter, we acknowledge that Greenwood and Service Vending Co. do not

present perfect analogies with respect to the specific and narrow issue presented in this case.

That said, we believe that the general principle announced in Greenwood and Service Vending

Co. provides the proper starting point for addressing the foregoing issue raised in this case, as the

issues in those cases were sufficiently analogous. Autumn essentially asks us to accept the

premise that the 2018 Incident would not have occurred absent the existence of the IC

Agreement and/or the Lease Agreement. Autumn then argues that this “but for” causation,

 15
alone, is sufficient to determine that her tort claims against Bartlett “arose from” those contracts

such that personal jurisdiction is established under the “making of a contract” provision of

Missouri’s long-arm statute. However, in following the principle from Greenwood and Service

Vending Co., we conclude that, for purposes of determining whether a claim “arose from” a

contract relied upon as the basis for personal jurisdiction under § 506.500.1(2), the plaintiff must

allege and prove something more than that the events giving rise to the claims asserted would not

have occurred absent the existence of the contract(s) at issue, especially negligence claims

otherwise totally unrelated to the contract(s) at issue. In this case, Autumn’s “making of a

contract” argument fails, in large part, because she has failed to establish that her negligence

claims against Bartlett “arose under” either the IC Agreement or the Lease Agreement because

the most she can say about those claims, for purposes of determining long-arm jurisdiction

pursuant to § 506.500.1(2), is that the 2018 Incident would not have occurred in the absence of

these agreements.

 Moreover, Autumn has cited no Missouri case which found personal jurisdiction based

on the making of a contract under facts even remotely similar to those in this case, and our

research has found no such Missouri case. For these reasons, we determine that Autumn’s tort

claims against Bartlett in the Second Amended Petition do not “arise from” the IC Agreement or

the Lease Agreement for purposes of Missouri’s long-arm statute. In addition, because

Appellants are neither parties to nor third-party beneficiaries of either agreement, the allegation

in the Second Amended Petition that “Bartlett agreed to venue and personal jurisdiction in St.

Louis County Circuit Court for claims relating to her work for Mesa” also does not support

Autumn’s “making of a contract” argument under § 506.500.1(2).

 16
 2. Transaction of any business in Missouri

 With respect to Autumn’s argument that Bartlett transacted business in Missouri, we

initially note that “Missouri courts have consistently held that the requirement of ‘transaction of

any business within this state’ must be construed broadly and may consist of a single transaction

if that is the transaction sued upon.” Lindley, 55 S.W.3d at 910 (quoting State ex rel. Metal Serv.

Ctr. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984)).

 In this case, Autumn’s “transaction of business” argument pursuant to § 506.500.1(1)

appears to primarily rely on the allegation that Bartlett carried numerous loads for Mesa

customers pursuant to the IC Agreement. Specifically, ¶ 8 of the Second Amended Petition

alleges that Bartlett “worked extensively in Missouri including picking-up [sic] and delivering

loads for Mesa customers.” However, even if we accept that Bartlett had previously “worked

extensively in Missouri,” including picking up and delivering loads for Mesa customers, there

are absolutely no allegations in the Second Amended Petition, and no supporting evidence in the

record, establishing that the tort claims against Bartlett actually “arose from” this conduct.

 In particular, Bartlett notes that there are no allegations or evidence that the particular

load she was hauling at the time of the 2018 Incident was either picked up in or delivered to

Missouri. However, even if this load had been picked up in or delivered to Missouri, that fact

would not alter our conclusion. The origin or destination of the load, given the other facts and

circumstances of this case, is purely incidental to the cause of the 2018 Incident. The core claim

against Bartlett in the Second Amended Petition alleges ordinary negligence in connection with

her operation of her tractor-trailer, including that she failed to keep a careful lookout, failed to

maintain control of the vehicle, was distracted, and failed to properly maintain the tractor and/or

trailer. Therefore, the origin or destination of the load Bartlett happened to be carrying at the

 17
time of the 2018 Incident has absolutely nothing to do with these issues in the case, and this fact

will not impact the outcome of the negligence claims against Bartlett in any way.

 We also note that Autumn has cited no Missouri case which found personal jurisdiction

based on the transaction of business in Missouri under facts even remotely similar to those in this

case, and our research has found no such Missouri case. Rather, this case is very similar to

Lindley v. Midwest Pulmonary Consultants, P.C., wherein the Western District of this Court held

that an individual defendant, a medical doctor and Kansas resident, was not subject to personal

jurisdiction in Missouri under § 506.500 for claims of medical malpractice that were committed

exclusively in Kansas. 55 S.W.3d at 913-14. The plaintiffs in Lindley argued that the defendant

doctor was nonetheless subject to personal jurisdiction under Missouri’s long-arm statute

because he purportedly “transacted business” in Missouri by virtue of the following facts: (1) he

was licensed to practice medicine in Missouri; (2) he was employed by a Missouri corporation at

all relevant times; (3) his services, although performed exclusively in Kansas, were billed from

Missouri (i.e., from his Missouri employer); and (4) payment for his services was made to

Missouri (i.e., to his Missouri employer). See id. at 908-09. However, the Western District in

Lindley ultimately rejected the plaintiffs’ personal jurisdiction argument, noting that “[n]othing

done in Kansas was intended to have an effect in Missouri.” Id. at 911. In addition, the Western

District noted that the plaintiffs “assert[ed] no facts demonstrating that [the defendant doctor]’s

connection as an employee of a Missouri entity affected their actions or those of [the defendant

doctor] in the care and treatment of [the plaintiff].” Id. at 912. The Western District also

specifically noted that the fact the defendant doctor was licensed in Missouri did not in any way

affect the care he provided, and further, the injured plaintiff failed to show that he chose the

defendant doctor due to his ability to practice in Missouri. Id. Accordingly, the Western District

 18
concluded its analysis as follows: “The [plaintiffs’] claim for medical malpractice arose from

care provided only in Kansas by a Kansas caregiver. The [plaintiffs] failed to make a prima

facie case demonstrating that the suit arose from any of the activities enumerated in the long-arm

statute.” Id. at 914 (emphasis added).

 The facts in this case, however, are not even as compelling as they were in Lindley, and

thus warrant the same result—a finding that Bartlett did not “transact any business” in Missouri

within the meaning of § 506.500.1(1). First, like in Lindley, no reasonable argument can be

made that Bartlett’s conduct in connection with the 2018 Incident was intended to have, or

actually did have, any effects or consequences in Missouri because: (a) the 2018 Incident

occurred in California; and (b) Appellants were Oklahoma residents at all relevant times.

Second, no reasonable argument can be made that Bartlett’s status as an independent contractor

of a Missouri corporation affected her or Mesa’s actions in general or affected Bartlett’s conduct

in connection with the 2018 Incident in particular. This is especially true because, unlike the

close doctor-patient relationship between the defendant and plaintiff in Lindley, there are no

allegations or evidence of a similar close relationship between Bartlett and Charles. That said,

we recognize that in his affidavit submitted in opposition to Bartlett’s Motion to Dismiss,

Charles attested to the fact that he was a fellow “over-the-road truck driver” for Mesa pursuant to

a similar independent contractor agreement, and he also hauled many loads for Mesa customers

that were either picked up in or delivered to Missouri. However, these facts do not alter our

analysis, as Charles and Bartlett’s status as fellow independent contractors of the same Missouri

company does not create a special relationship that would reasonably be expected to alter

Bartlett’s actions toward Charles as they relate to her general duties of care as a truck driver on

public roads and elsewhere, which duties of care she owed to everyone. Finally, in the same way

 19
the fact that the defendant doctor in Lindley was licensed to practice medicine in Missouri did

not in any way affect the care and treatment he provided to the plaintiff patient in Kansas, the

fact that Bartlett’s tractor displayed Mesa’s USDOT and FMCSA numbers in no way affected

her conduct in connection with the 2018 Incident.

 For the foregoing reasons, the claims against Bartlett in the Second Amended Petition did

not “arise from” her alleged prior work for Mesa customers in Missouri, regardless of the origin

or destination of the load she was carrying at the time of the 2018 Incident and the other facts

Autumn relies on. Accordingly, we conclude that Bartlett did not “transact any business” in

Missouri within the meaning of § 506.500.1(1).

 3. Contracting to insure any person, property or risk located in Missouri

 With respect to Autumn’s argument that Bartlett is subject to personal jurisdiction by

virtue of agreeing to indemnify Mesa in the IC Agreement, we also find this argument to be

without merit. Specifically, Autumn relies on the following provision in ¶ 8(C) of the IC

Agreement:

 Except as otherwise provided herein, [Bartlett] shall be solely and exclusively
 responsible for any and all claims, demands and/or causes of action arising from
 or relating to [Bartlett’s] performance of Services hereunder and/or [Bartlett’s]
 acts and/or omissions, including but not limited to, claims for wrongful death
 and/or personal injuries, claims arising from vehicular accidents, claims for
 property damage, claims for costs of remediation and cleaning up any spills,
 discharges of cargo of other debris from accidents and/or any other claims
 asserted by any third party(ies) arising from or relating to [Bartlett’s] acts or
 omissions. In the event any claim or demand is asserted against [Mesa] arising
 from or relating to [Bartlett’s] performance of Services hereunder and any such
 claim is submitted to [Mesa’s] insurance provider, [Bartlett] hereby covenants and
 agrees to pay the deductible associated with any such claim.

 Sub-division (5) of § 506.500.1 provides for personal jurisdiction in Missouri for any

person, firm, or corporation who performs the following act: “The contracting to insure any

person, property or risk located within this state at the time of contracting;….” The operative

 20
phrase in this provision is “contracting to insure,” but Autumn has cited no authority supporting

her proposition that an indemnification clause contained within a larger independent contractor

agreement, such as the IC Agreement, constitutes a “contract to insure” within the meaning of

§ 506.500.1(5). However, we need not decide whether the relevant portion of ¶ 8(C) of the IC

Agreement constitutes a “contract to insure” (and expressly decline to do so) because we

conclude that Autumn’s “contracting to insure” argument suffers the same fatal flaw as her prior

two arguments under § 506.500.1—the claims against Bartlett in the Second Amended Petition

simply do not “arise from” Bartlett’s indemnification agreement in ¶ 8(C) of the IC Agreement.

 First, as discussed above in connection with Autumn’s broader “making of a contract”

argument under § 506.500.1(2), Appellants are neither parties to, nor third-party beneficiaries of,

the IC Agreement, including ¶ 8(C) contained therein. Thus, to the extent Bartlett “contracted to

insure” any person, property, or risk by virtue of ¶ 8(C), Appellants cannot invoke or otherwise

indirectly benefit from that contract provision. Accordingly, for the same reasons the claims

against Bartlett in the Second Amended Petition do not “arise from” the IC Agreement in

general, they likewise do not “arise from” ¶ 8(C) in particular. Second, even if, arguendo,

Appellants were able to invoke or otherwise indirectly benefit from ¶ 8(C), their argument fails

because they were not located in Missouri at the time of contracting because Appellants were

Oklahoma residents at all relevant times. Moreover, to the extent the 2018 Incident is considered

an insured “risk” within the meaning of § 506.500.1(5), the fact that incident occurred in

California clearly precludes application of this provision of the long-arm statute.

 4. Minimum Contacts with Missouri

 As noted above, we are only required to analyze whether Bartlett had sufficient

“minimum contacts” with Missouri to satisfy due process if Autumn satisfies her initial burden

 21
of making a prima facie case showing that Bartlett engaged in at least one of the acts enumerated

in § 506.500.1 and that her claims against Bartlett in the Second Amended Petition “arose from”

that conduct. See Lindley, 55 S.W.3d at 914. Therefore, because we find that Autumn has failed

to satisfy that initial burden, we decline to address whether Bartlett had “minimum contacts”

with Missouri as unnecessary.

 Autumn’s point on appeal is denied.

 C. Conclusion

 For the foregoing reasons, the circuit court did not err in granting Bartlett’s Motion to

Dismiss because to the extent Bartlett engaged in any of the specific acts enumerated in sub-

divisions (1), (2), and (5) of § 506.500.1, the claims asserted against her in the Second Amended

Petition do not “arise from” any such conduct, which precludes the circuit court’s exercise of

personal jurisdiction over her. Schuerman, 185 S.W.3d at 776. Because the dismissal of the

claims against Bartlett was not an adjudication on the merits, the circuit court correctly made the

dismissal without prejudice. Id. at 777. Accordingly, the circuit court’s dismissal of the claims

against Bartlett in the Second Amended Petition, as set forth in the Amended Dismissal Order of

January 11, 2021, is hereby affirmed.

 _______________________________
 Kelly C. Broniec, Judge

Kurt S. Odenwald, P.J. and
John P. Torbitzky, J. concur.

 22